UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

DANIEL HARPER,

    Petitioner,

v.

BRIGITTE AMSBERRY, as
Superintendent,

    Respondent.

Case No. 2:17-cv-01425-AA

OPINION AND ORDER

AIKEN, District Judge:

    Petitioner, an inmate at the Oregon Department of Corrections, filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254, alleging that he was deprived of his rights to due process, equal protection, and fundamental fairness under the Fourteenth Amendment when the trial court gave a certain jury instruction, and that he received inadequate assistance of counsel when his attorney did not object to the instruction. For the reasons discussed below, the petition is denied.

1 – OPINION AND ORDER

BACKGROUND

Petitioner was arrested on October 30, 2008, on charges relating to petitioner's involvement in crimes, including robbery, burglary, assault, theft, and identity theft carried out on September 23, 2008 and to property crimes related to subsequent use of credit cards stolen on that date. Resp't Ex. 102[1] (ECF No. 14-1 at 27). In one of the incidents leading to petitioner's indictment and conviction, petitioner and another individual planned and carried out a break-in at an area home. Planning for the contingency that the owner, Allen Curle, might be home, petitioner and the other individual discussed the possibility that Mr. Curle would need to be confronted. Resp't Ex. 117 at 19 (ECF No. 15-1 at 20). Indeed, during the course of the burglary, Mr. Curle was seriously injured by his assailants. The case was consolidated for trial with an earlier case involving the same location and victim, which charged petitioner with burglary and theft of copper from commercial transformers in January 2008. Resp't Exs. 103 (ECF No. 14-1 at 27), 104 at 45-49 (ECF No. 14-1 at 79-83).

At the close of the consolidated criminal trial, the jury was provided formal instructions on the governing law, including the following instruction:

> A person that aid[s] or abets another in committing a crime, in addition to being criminally responsible for the crime that is committed is also criminally responsible for any acts or other crimes that were committed as a natur[al] and probable consequence of the planning, preparation, or commission of the intended crime.

Resp't Ex. 104 at 312-13 (ECF No. 14-1 at 346-47)[2]. The jury returned a verdict finding guilt on all counts, aside from criminal mischief. *Id.* at 338-42, 349-50. Petitioner was sentenced on both cases on April 15, 2010, and was given concurrent and consecutive sentences totaling more than twenty-two and one-half years. Resp't Ex. 104. Petitioner appealed, and the Oregon Court of

---

[1] Internal citations refer to the lower-right pagination of the exhibits (*i.e.*, "Page x of 4").
[2] It is notable that shortly after petitioner's trial concluded, the Oregon Supreme Court determined that such a jury instruction was void for vagueness. *See State v. Lopez-Minjarez*, 350 Or. 576, 591 (2011) (en banc).

2 – OPINION AND ORDER

Appeals determined that petitioner's challenge to the jury instruction regarding aiding and abetting was unreviewable because it was not preserved at trial, but that the case should be remanded to the trial court to merge Counts 3 and 4 of the indictment. *See State v. Harper*, 251 Or. App. 239, 241-43 (2012).

Petitioner filed an action for post-conviction relief ("PCR") in Malheur County on October 21, 2014. Resp't Ex. 116 (ECF No. 14-1 at 659). The PCR court rejected petitioner's claims, including the claim that petitioner's counsel provided inadequate assistance for failing to object to the jury instruction regarding aiding and abetting. Resp't Exs. 137 at 2 (ECF 15-3 at 119). The Oregon Court of Appeals affirmed the PCR court without opinion, and the Oregon Supreme Court denied review. Resp't Exs. 141 at 17 (ECF No. 15-3 at 242), 144 (ECF No. 15-3 at 257)

## DISCUSSION

Petitioner filed his original federal habeas petition with this Court on September 11, 2017 and filed an amended petition on April 2, 2018. ECF Nos. 1, 16. Petitioner lists six claims in his amended petition, but only provides argument on two: (1) whether the trial court erred in giving the "natural and probable consequences" instruction (Claim 2(D)(i)), and (2) whether petitioner's trial counsel provided inadequate assistance in failing to object to said jury instruction (Claim 3(D)(i)). *See* Pet. 10-11, 14-15; Resp't Br. 7-8 (ECF No. 42 at 13-14). Petitioner does not address the remaining grounds for relief alleged in his Petitioner for Writ of Habeas Corpus. As such, petitioner has not sustained his burden to demonstrate why he is entitled to relief on those claims. *See Lampert*, 393 F.3d at 970 n.16 (2004). Nevertheless, the Court has reviewed petitioner's remaining claims and is satisfied that petitioner is not entitled to habeas relief.

//

//

A.  Claim 2(D)(i): Erroneous Jury Instruction

As noted briefly above, petitioner claims that the trial court erred in violation of his constitutional right to due process under the Fourteenth Amendment by instructing the jury that "a defendant can be criminally responsible for any other crime that is the natural and probable consequence of a crime that a defendant aided in committing." *Lopez-Minjarez*, 350 Or. at 591. Petitioner argues that the instruction "diluted the prosecution's burden of proof and deprived petitioner of the right to be convicted only based on proof of his guilt beyond a reasonable doubt. Pet. at 10.

Respondent argues that because the federal claim was not fairly presented to the Oregon Courts of Appeals, the claim was not exhausted and is now technically defaulted. In support, respondent explains that although petitioner raised to the Oregon Court of Appeals that the instruction was erroneous under Oregon law, petitioner failed to present any argument to the Court of Appeals that the jury instruction violated his Fourteenth Amendment due process rights. Instead, continues respondent, petitioner did not allege any federal constitutional claim until the case was submitted to the state's highest court on discretionary review, such that any such claim is precluded from review by this Court. *See, e.g., Casey v. Moore*, 386 F.3d 896, 819 (9th Cir. 2004) ("Because we conclude that Casey raised his federal constitutional claims for the first and only time to the state's highest court on discretionary review, he did not fairly present them.")

To properly exhaust a claim under 28 U.S.C. § 2254 before it may be considered by a federal court, a petitioner is required to fairly present it to "each appropriate state court." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citing *Duncan v. Henry*, 513 U.S. 364, 365 (1995)). Fair presentation of a claim requires more than providing a state court the factual predicate necessary to *support* a federal claim before the state courts, or that a "somewhat similar state-law claim was

made." *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (citations omitted). A petitioner is "required to reference specific provisions of the federal constitution or cite to federal case law and to provide a statement of the facts that entitle him to relief." *Robinson v. Schriro*, 595 F.3d 1086, 1101 (9th Cir. 2010) (citing *Gray v. Netherland*, 518 U.S. 152, 162-63 (1996)).

Petitioner maintains that he successfully presented a federal claim that the jury instruction at issue violated his constitutional right to due process in his brief before the Oregon Court of Appeals. Pet's Reply at 2-3 (ECF No. 47 at 2-3). Petitioner contends that he raised a federal due process claim by arguing his convictions on Robbery in the First Degree and Assault in the Second Degree should be dismissed because they were based on insufficient evidence as a matter of law. Therein, petitioner proposed that because there was "no evidence" that defendant personally caused the injuries that Allan Curle suffered in the course of the break-in, the only way for the prosecution to win convictions on those counts was by invoking the "natural and probable consequences" theory of aid and abet liability, which was eventually invalidated in *State v. Lopez-Minjarez*, 350 Or. at 584 (natural and probable consequences misstates applicable law). The sufficiency argument, maintains petitioner, was premised on the effect of the jury instruction, which "obviated" the *mens rea* element of the crime. Pet's Reply at 2. Petitioner further argues that he fairly presented a federal claim by citing *Jackson v. Virginia*, 443 U.S. 307 (1979), as the relevant legal standard for sufficiency of the evidence. Resp't Ex. 105 at 13-14 (ECF No. 14-1 at 472-73) (citing *Jackson*, 433 U.S. at 319). Petitioner explained in his brief before the Oregon Court of Appeals that "there was no evidence that [he] personally caused serious injury to Curle, and the state responded that it was not required to prove that defendant personally assaulted Curle because defendant was liable under aid and abet theory for planning the robbery and being present ... at the crime." *Id.* at 14-15. Petitioner thus argues that he "explicitly argued that his conviction

5 – OPINION AND ORDER

violated due process because the instruction impermissibly diluted the *mens rea* requirement." Pet's Reply at 3.

It is clear that petitioner explicitly argued that his due process rights were violated based on insufficient evidence to support his conviction pursuant to state law, however, petitioner did not argue that his federal due process rights were violated by the inclusion of the jury instruction itself. When arguing that "the court erred by giving the jury a 'natural and probable consequences' aiding and abetting instruction," petitioner did not purport to engage federal law at all, but instead focused exclusively on its invalidity as a matter of Oregon law. *See* Resp't Ex. 105 at 24-26.

Although petitioner relies on his citation to *Jackson* to constitute presentment of a federal issue to the state courts, the citation was made in the context of wholly separate claims and a different legal theory: insufficient evidence. However, simply amalgamating of elements of different claims is insufficient for purposes of fair presentation, because "exhaustion is determined on a claim-by-claim basis." *Insyxiengmay v. Morgan*, 403 F.3d 6567, 667 (9th Cir. 2005). While petitioner may have raised a federal issue on grounds of insufficiency of the evidence by virtue of the reference to *Jackson*, petitioner raised no federal when arguing about the impropriety of the jury instruction; it is plainly a separate claim, if predicated on some of the same basic facts. But fair presentation requires more than merely presenting the factual circumstances necessary to support a federal claim, "or that a somewhat similar state-law claim was made." *Harless*, 459 U.S. at 6 (1982) (citations omitted). Indeed, even where the federal basis for a claim may be self-evident, a petitioner is required to *explicitly* provide that basis by citation to federal law or to decisions of the federal courts. *Gray*, 518 U.S. at 162-63. In sum, the mere similarity of claims is not sufficient to exhaust. *Duncan*, 513 U.S. at 366 (failure to state federal basis for claim is "especially pronounced" where petitioner raises a federal basis for a different claim). II.

The Oregon Court of Appeals, on direct review, found that it was barred from reviewing petitioner's claim on state law grounds, based on its decision in *State v. Alonzo*, 249 Or. App. 149, 150-51 (2012) (party may not obtain review on appeal of asserted error in instructing jury unless exception is noted immediately after such instruction is given). Specifically, petitioner argues that Or. R. Civ. P.§ 59(H)(1) was (1) inadequate and inconsistently applied, and (2) not independent of federal law. *See* Pet's Br. at 16 (ECF No. 42 at 22). Although the rule proscribing review of unpreserved instructional errors in *Alonzo* was eventually overturned in *State v. Vanornum*, 273 Or. App. 263, 270 (2015), *Alonzo* was controlling at the time of petitioner's trial and appeal. Accordingly, the Court of Appeals did not err.

To the extent that petitioner argues that the state procedural bar was inappropriately applied and that petitioner's trial counsel erroneously failed to object to it, the argument fails. Even accepting that trial counsel should have been on notice that the jury instruction was likely erroneous under Oregon law, the fact remains that the Oregon Court of Appeals was not presented with any federal claim as to the impropriety of the jury instruction, and therefore any such claim was not exhausted, and is procedurally defaulted. *See Coleman v. Thompson*, 501 U.S. 722, 729, 731-32 (1991) (This Court will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment."). Finally, because petitioner failed to present a federal claim regarding the jury instruction, it is abundantly clear that the Oregon Court of Appeals' application of the state procedural rule did not rest primarily on federal law, nor was it interwoven with such law. *Coleman*, 501 U.S. at 740.

For these reasons, Claim 2(D)(i) was never exhausted in the state courts, and because no state court remedy remains available to petitioner, the claim is technically exhausted, but because

7 – OPINION AND ORDER

the state-court remedies were not *properly* exhausted, the claim is procedurally defaulted. *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999); *see also Duncan*, 513 U.S. at 365-66 ("To preserve his federal constitutional claim, [petitioner] was required to specifically apprise the state court that he was making such a claim."); 28 U.S.C. § 2254(b)(1)(A).

B.  Claim 3(D)(i): Trial Counsel's Failure to Object to Jury Instruction

The PCR court also denied petitioner relief on his claim asserting IAC for failing to file an exception to the jury instruction. *See* Resp't Exs. 116, 137 at 2. The PCR court explained that petitioner's counsel was not ineffective because the case that petitioner relied on in assigning error, was not yet decided at the time of the trial. Resp't Ex. 137 at 2 (citing *Lopez-Minjarez*, 236 Or. App. 270 (2010)). The PCR court additionally held, "there was no evidence presented to show that . . . [petitioner's] attorney should have known about the impending change in law." Resp't Ex. 137 at 2. The court continued, "[m]ore importantly, there is no evidence that the . . . failure to object . . . prejudiced [p]etitioner in any way." *Id.* To conclude, the PCR court explained, "[t]he case was not tried on a theory that the crime was a 'natural and probable consequence' of [p]etitioners [sic] action. The evidence was that [p]etitioner was an active participant in planning and committing the crimes." *Id.* Thereafter, the Oregon Court of Appeals affirmed without opinion, and the Oregon Supreme Court denied review. Resp't Exs. 141-44. Petitioner again assigns error to his trial counsel's failure to object to the "natural and probable consequences" jury instruction described in Part A, *supra*.

Pursuant to AEDPA, habeas corpus relief "shall not be granted with respect to any claim . . . adjudicated on the merits in State court proceedings," unless it: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based

8 – OPINION AND ORDER

on an unreasonable determination of the facts in light of evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

In order to prove inadequate assistance of counsel (IAC), a petitioner must (1) demonstrate that counsel's performance was objectively unreasonable, and (2) show that the deficient performance was prejudicial to the defense case. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In analyzing the first prong of such a claim, the "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [petitioner] must overcome the presumption that, under the circumstances, the challenged action may be considered a sound trial strategy." *Id.* at 689. In assessing the second prong of *Strickland*, the court must determine if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. The legal standards set out in *Strickland* and 20 U.S.C. § 2254(d) are formidable; because both standards are highly deferential, and when both apply, review is doubly deferential. *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (citation omitted). Because § 2254 applies, "the question is not whether counsel's actional were reasonable . . . [rather], [t]he question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.* Additionally, the factual findings of the state courts are also entitled to deference, such that petitioner bears the burden of refuting them by clear and convincing evidence. *See* 28 U.S.C. § 2254 (d)(2) & (e)(1).

As previously discussed, the case which determined the "natural and probable consequences" instruction was contrary to Oregon law—*Lopez-Minjarez*—was decided by the Oregon Court of Appeals several months after the conclusion of petitioner's criminal trial, and later affirmed by the Oregon Supreme Court. *See Lopez-Minjarez*, 236 Or. App. at 275; *Lopez*

*Minjarez*, 350 Or. at 582. Accordingly, the PCR court found that neither case had yet been decided at the conclusion of petitioner's trial, and that petitioner had provided no evidence that trial counsel should have known about the imminent change in state law. Resp't Ex. 137 at 2. The PCR court further determined that there was no evidence that trial counsel's failure to object to the instruction was prejudicial, because "the case was not tried on a theory that the crime was a 'natural and probable consequence' of petitioner's crime of burglary." *Id.* Under *Strickland* and AEDPA, the PCR court's conclusions are entitled to significant deference insofar as they were reasonable. Petitioner contends that counsel's performance in failing to object to the jury instruction was objectively unreasonable because the instruction was "a misstatement of Oregon law and contained a presumption of an essential element in violation of the Fourteenth Amendment." Pet. Br. at 19.

While petitioner avers that the jury instruction was a misstatement of Oregon law at the time the instruction was given, the contention is not supported by law or fact. As discussed above, the cases that determined the "natural and probable consequences" instruction was incompatible with Oregon law were not decided until after petitioner's criminal trial had concluded. Petitioner argues at some length that some Oregon courts had "strongly suggested that a challenge" to the instruction would likely succeed as early as 12 years before petitioner's trial. *Id.* at 20; *see State v. Anlauf*, 164 Or. App. 672 (2000). In *Anlauf*, however, the Oregon Court of Appeals explained that the state was reading the instruction too broadly, as its position was that *any act* by any conspirator in a crime was necessarily "natural and probable consequences of the unlawful combination or undertaking." *Anlauf*, 164 Or. App. at 678.

Respondent maintains that because the PCR court was not presented with evidence that trial counsel should have known the jury instruction was either disfavored or likely to be soon invalidated by the Oregon courts, it was not unreasonable for the PCR court to determine counsel

10 – OPINION AND ORDER

did not perform unreasonably. Resp't Br. at 19. The Court agrees. As respondent explains, because petitioner admitted to planning the burglary and the plan to incapacitate Curle if needed, the facts were such that the "natural and probable consequences" instruction was not necessarily on trial counsel's radar. Instead, considering the particular facts of the case, a reasonably-prepared trial attorney should have anticipated issues of accessory liability under Or. Rev. Stat. § 161.155(2)(b), as well as defenses for accusations of personal involvement in the assault and robbery, but not necessarily under the "natural and probably consequences" rubric.

For the reasons described *supra*, it is not clear that the jury convicted petitioner on a "natural and probable consequences" theory of criminal liability because in contrast to the facts in *Anlauf*, here petitioner was involved not only in the planning of the burglary, but also in planning for physical violence if the situation were to arise during the course of the crime. As such, petitioner was criminally liable under an aid and abet theory that made petitioner personally responsible for "those crimes that the abettor intended to promote or facilitate." *Lopez-Minjarez*, 350 Or. at 583.

Accordingly, argues respondent, it was reasonable for trial counsel not to divert time and resources away from studying the state's most likely theories of liability, in order to locate and research *Anlauf* and craft an argument against the natural and probable consequences jury instruction. Again, the Court agrees that it was not objectively unreasonable for counsel to prepare for the legal issues and cases that he was most likely to face at trial. Moreover, the PCR court's finding that this "case was not tried on a theory that the crime was a 'natural and probable consequence' of Petitioners action," is entitled to deference. Resp't Ex 137 at 2. Thus, petitioner has not demonstrated that trial counsel's failure to object or prepare for the natural and probable consequences jury instruction constituted deficient performance below any objectively reasonable

11 – OPINION AND ORDER

standard. *Strickland*, 466 U.S. at 687. Petitioner has not provided persuasive evidence that counsel's conduct did not fall "within the wide range of reasonable professional assistance." *Id.* at 689.

Because the Court does not find that petitioner's trial counsel's performance was deficient, it need not reach the question of whether the deficient performance prejudiced the outcome of the trial. However, even assuming for the sake of argument that the performance was deficient, petitioner has also not demonstrated that he was prejudiced because it is not certain that the erroneous instruction prejudiced him, because the state advanced two other criminal liability theories throughout the trial.

Petitioner further argues that based on the court's instructions, the jury found that "in addition to being criminally responsible for the crime that is committed [petitioner] [wa]s also criminally responsible for *any acts or other crimes* that were committed as a natur[al] and probable consequence of the planning, preparation[,] or commission of the intended crime." Resp't Ex. 105 at 24. Following the instruction without regard for the legal principle set forth in *Lopez-Minjarez*, argues petitioner, the jury was able to convict petitioner on robbery and assault without the state-law-required *mens rea* element.

Petitioner, however, misapprehends the holding in *Lopez-Minjarez*. There, the Oregon Supreme Court explained that accomplice liability is both created and limited by Or. Rev. Stat. § 161.155,[3] because there, the court did not find the jury instruction was prejudicial *per se*. Instead, the court held that the defendant could be found guilty on any one of three theories: (1) personally

---

[3] Or. Rev. Stat. § 161.155: A person is criminally liable for the conduct of another person constituting a crime if: (1) [t]he person is made criminally liable by the statute defining the crime; or (2) [w]ith the intent to promote or facilitate the commission of the crime the person: (a) [s]olicits or commands such other person to commit the crime; or (b) [a]ids or abets or agrees or attempts to aid or abet such other person in planning or committing the crime; or (c) [h]aving a legal duty to prevent the commission of the crime, fails to make an effort the person is legally required to make.

12 – OPINION AND ORDER

committing the charged crime; (2) aiding and abetting the crime with requisite intent; or (3) the charged crime was a natural and probable consequence of any crime that defendant aided in committing. *Lopez-Minjarez*, 350 Or. at 584. The Oregon Supreme Court held the evidence showed that the defendant intended to commit burglary and did so before other crimes were committed, such that the "natural and probable consequences" instruction could not apply to burglary, as no crime was its predicate. *Id.* at 587. Similarly, it could not apply to the defendant's kidnapping charge, because the only evidence was that he directly participated in that crime. Further, the court determined that, as to the charges of assault and murder, the instruction was prejudicial because having found the defendant guilty of burglary as an accomplice, it could have found that the defendant was guilty of assault if the jury determined that that his co-defendant's assault on a victim was the natural and probable consequence of the burglary. *Id.* The Court reasoned that because the burglary was the first in a sequence of crimes, the jury could have— erroneously—concluded that the defendant intended to promote or facilitate the assault and murder merely by being an accomplice to the burglary, even if the defendant took no part in the planning or carrying out of violent acts. As such, the instruction prejudiced the defendant, at least insofar as there was no evidence that defendant actually *intended* for the assault or murder to occur. *Id.* at 587-88.

Thus, although the Oregon Supreme Court reversed *State v. Lopez-Minjarez* in part because there was no evidence that the defendant there intended or participated in the assault and murder, the facts in the instant matter are materially different. Here, there was evidence that petitioner knew that the victim, Curle, was likely to be at home at the time of the planned burglary, that petitioner planned to "restrain" him if he awoke, discussed what would happen if Curle confronted them (*i.e.*, co-defendant "would take care of it"), and by that, petitioner meant Curle would be tied

13 – OPINION AND ORDER

up, but acknowledged that his co-defendant indicated he would "sock" Curle if necessary. Resp't Ex. 124 at 23, 27-28, 37-38, 48-49 (*See* ECF 15-1 at 50). Moreover, petitioner admitted that it was his *idea* to, "lay a hand on" Curle, "if it came down to it." *Id.* at 57; *see also id.* at 74 (admitting the plan was to "incapacitate" Curle if he was found in the home).

Based on the foregoing, the factual circumstances and applicable law of petitioner's crimes and those adjudicated by the Oregon Supreme Court in *Lopez-Minjarez* are distinguishable. In contrast to the defendant in *Lopez-Minjarez*, evidence presented in the matter at bar implicated petitioner in the planning of violence if the situation arose in the course of the burglary. Therefore, although one of the theories of criminal liability was erroneous—*i.e.*, any natural and probable consequence of the burglary, it was nonetheless possible for the jury to find petitioner guilty of assault and robbery without the instruction based on the separate theory of aiding and abetting the crimes of assault and robbery with the requisite intent, because petitioner intended to promote or facilitate the assault as part of the burglary plan, and was therefore personally criminally liable for his codefendant's commission of the crimes.[4] Or. Rev. Stat. § 161.155(2)(b).

Petitioner argues that it is not possible to affirmatively discern which criminal liability theory the jury adopted, and therefore this Court cannot confirm that the jury instruction was harmless. The circumstances surrounding the jury's decision are somewhat ambiguous. On one hand, respondent argues that because the jury answered affirmatively on an enhancement that could only be found if the jury believed that petitioner personally used physical force against Curle, that the jury was convinced that petitioner perpetrated the attack. Resp't Br. at 23 (citing Resp't Ex. 104 at 293). On the other hand, petitioner argues that because the jury returned a "not guilty"

---

[4] The Court notes that the state argued that petitioner personally assaulted Curle, so there is some indication that the jury adopted that theory in arriving at a guilty verdict. In any case, it was possible for the jury to find guilt absent any accessory liability.

14 – OPINION AND ORDER

verdict on the count of criminal mischief based on Curle's eyeglasses being broken during the assault and robbery, "[t]he only rational explanation" is that "the jury did not view the damage to Curle's glasses as a 'natural and probable consequence of the planning, preparation, or commission of the intended crime.'" Pet's Br. at 13-14.

It is not clear, however, how petitioner's position furthers his argument. Presumably, petitioner seeks to demonstrate that the jury *adopted* the criminal liability theory set out in the natural and probable consequences instruction, as doing so would imply that the instruction was prejudicial. However, there is no reason that the jury would necessarily assume that the broken glasses *were not* a natural and probable consequence of the planning, preparation, or commission of burglary, if the jury found that assault and robbery *were* such natural and probable consequences. Instead, the fact that the jury did not convict on the criminal mischief count suggests that although the jury felt that petitioner aided and abetted the burglary and assault with requisite intent to the extent he planned the break-in and for the possibility of violence, there was no such requisite intent for the damage done to the glasses, as they were presumably never part of the plan. Further, while it would likely be "natural and probable" that eyeglasses would be broken in the course of an assault, the jury did not so find. For these reasons, the Court rejects petitioner's contention that the only rational explanation is that the jury utilized the natural and probable consequences liability theory and instruction; at best, the outcome was ambiguous.

For all the foregoing reasons, petitioner has not shown that "the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fair-minded disagreement." *Richter*, 562 U.S. at 102. Petitioner has not met that high bar.

## CONCLUSION

For the reasons explained above, the Amended Petition of Writ of Habeas Corpus (ECF No. 16) is DENIED and this case is DISMISSED. A Certificate of Appealability is denied on the basis that petitioner has not made a substantial showing of the denial of a constitutional right pursuant to 28 U.S.C. § 2253(c)(2).

DATED this 16th day of January, 2020.

                                        Ann Aiken
                                  United States District Judge